Nicholas Milan Loncar, Esq. (SBN 036368)
Tucson Defenders: Attorneys at Law
2030 E Broadway Blvd, Suite 123
Tucson, AZ 85719
Telephone: (520) 585-5757
Facsimile:  (520) 585-5705
E-Mail: Nick@TucsonDefenders.com
Attorney for Defendant
Ana Bertha Hernandez

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | 26-cr-00145-AMM |
|---|---|
| Plaintiff, | |
| vs. | SENTENCING MEMORANDUM (Defendant Out of Custody) |
| Ana Bertha Hernandez, | |
| Defendant. | *Hon. Angela M. Martinez* |

The Defendant, Ana Bertha Hernandez, ("Defendant" or "Ms. Hernandez") by and through undersigned counsel, hereby submits the following recommendations for a sentencing hearing scheduled for June 4, 2026 at 10:30 AM.

A. **Overview**

Having reviewed the Presentence Investigation Report ("Report"), the Defendant concurs with the criminal history and offense level calculations therein. Defendant respectfully requests the Court accept the her plea of Guilty and sentence her to Probation per the recommendation in the Report.

1

Ms. Hernandez, 28, comes before the Court having experienced tremendous growth over the approximately nine months since her arrest in this case. Ms. Hernandez has lived a life full of struggle, but has also shown the resolve and character to overcome the challenges in her way. Ms. Hernandez accepts responsibility for her past mistakes, and deeply regrets the decision to participate in any criminal activity. She is troubled that she made the mistakes she did, and especially by concerns that many of the weapons she helped purchase remain unrecovered.

In the time since her arrest, Ms. Hernandez has performed very well on pretrial release, having completed inpatient drug treatment with Crossroads, and continues to participate in a supported sober lifestyle with the Arizona Women's Recovery Center. Through her own determination, the court's trust to permit her pretrial release, and the support of the aforementioned organizations and her family, Ms. Hernandez recently gave birth to a healthy baby boy, Amir, and is in the later parts of the process of reunification with her other two sons, Marcelo, 5, and Abraham, 1. Ms. Hernandez' three year old daughter, Renee, lives with her father.

Planning for the short and long term, Ms. Hernandez has been accepted to and resides at Weldon House, where she will continue to receive support and guidance while she grows personally, professionally, and as a parent. She has stood out in her high school equivalency classes, and is nearing earning her GED.

These changes are a stark contrast to Ms. Hernandez' early life, as well as her life at the time of her crime, and subsequently at the time of her arrest. Growing up in unstable

2

conditions, Ms. Hernandez was exposed to drugs, abuse, gang violence, criminality, and loss of her father to deportation from a young age. Continuing into early adulthood, she found herself in a series of abusive romantic relationships, and dealt with substance abuse issues. At the time of Ms. Hernandez' crimes, late 2023, Ms. Hernandez was living a life in crisis. Her age, lack of guidance, active severe methamphetamine addiction, and lack of housing security contributed to her failure to appreciate the seriousness of her crimes. Desperate to keep a roof over her head while caring for her son, Marcelo, she made the terrible decision to straw purchase nearly 50 firearms.

Even understanding the severity of her crimes now, Ms. Hernandez respectfully asks this Honorable Court to grant her a sentence of Probation so that she might continue her commendable progress, growth, and planning for a better future for herself and her children.

**B.  Reasons to Vary Downward from the Advisory Guideline Range**

While bound to consider the Guidelines, a sentencing court cannot impose a sentence that is greater than necessary to accomplish the sentencing goals set out in § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 91 (2007). For the following reasons, Ms. Hernandez respectfully asks this Court to vary downward significantly from the guideline range: (1) Ms. Hernandez' early life and continued history of abuse and difficult life challenges, (2) lack of criminal history and prior incarceration, (3) post-arrest efforts regarding substance use, (4) age at the time of her offense and lack of youthful guidance, (5) the impact on third parties, (6) that this conduct reflects aberrant behavior for Ms. Hernandez,

3

and (7) the conduct is atypical of the particular guideline range.  The sentencing goals of deterrence and reducing recidivism can be better accomplished with Ms. Hernandez' dedicated continued participation in community supervision than incarceration, which would threaten to derail her progress.

1.  **Post-Offense Rehabilitation**

Post-offense rehabilitation is an appropriate mitigating circumstance for courts to consider. *See Pepper v. United States*, 562 U.S. 475 (2011) (holding when a defendant's sentence has been set aside on appeal, a district court may consider evidence of the defendant's post-sentencing rehabilitation.). *See also United States v. Martin*, 520 F.3d 87 (1st Cir. 2000) (re-sentencing to thirty-one months from fifty-one months in securities fraud case property based on post-offense rehabilitation).  Studies have shown that individuals who complete drug treatment programs have lower rates of recidivism, and the rate is lower for those who complete drug treatment in the community that those who complete it in prison. Lisa Rosenblum, *Mandating Effective Treatment for Drug Offenders*, 53 Hastings L.J. 1217, 1220 (2002). Completion of a rehabilitation program, or the facilitation of a community rehabilitation program, can form the bases of a downward departure or variance. *See, e.g. United States v. Rutherford*, 323 F. Supp. 2d 911, 915 (E.D. Wis. 2004) (noting that a reformed offender is less likely to re-offend, thus a reduced sentence for such an offender will serve the purposes of specific deterrence and protection of the public"); *United States v. Perella*, 273 F. Supp. 2d 162, 164 (D. Mass. 2003) (imposing a sentence of probation where

4

defendant completed rehabilitation program and began volunteering with children at risk, observing the link between drug rehabilitation and preventing recidivism).

Since her arrest in the instant case, Ms. Hernandez has worked hard to demonstrate to the court that she is making serious and lasting changes in her life. She is showing commitment to sobriety, following the law, and her parental responsibilities. Ms. Hernandez has accepted that she cannot undo past mistakes, but has taken control of her present and future by taking her drug treatment seriously and avoiding people and situations which could result in relapse. Previously a heavy user of methamphetamine, she continues to work to strengthen her hold of her past addiction and intends to continue rehabilitation, sobriety, and following the rules of supervision if granted probation. Ms. Hernandez understands that being on probation will be challenging, and that she would be but one mistake away from potentially lengthy incarceration. She is up for the challenge. She will not let this Court, herself, or her children down.

2. **Defendant Experienced Abuse and a Disadvantaged Childhood**

Ms. Hernandez' lifetime of abuse and other challenges is something the court should consider in imposing her sentence. Courts have varied downwards, taking into account abuse suffered by offenders as children, and as adults. *See, e,g,, United States v. Walter,* 256 F. 3d. 891 (9th Cir. 2001) (combination of brutal beatings by defendant's father and introduction of drugs and alcohol by his mother, and most seriously, the sexual abuse by his cousin, which defendant suffered at a young age, constituted the type of extraordinary circumstances

5

justifying consideration of the psychological effects of childhood abuse and diminished capacity under § 5K2.13); *United States v. Samuels*, 2009 WL 875320 (S.D.N.Y. Apr. 2, 2009) (imposing time served sentence rather than Guideline range of seventy to eighty-seven months where defendant "was raised under poor economic circumstances with an abusive father addicted to crack"); *United States v. Mapp*, 2007 WL 485513 (E.D. Mich. Feb. 9, 2007) (granting variance based on defendant's upbringing where he frequently witnessed domestic violence and substance abuse by his parents until his grandmother took custody of him at age five); *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007) (affirming sixty-seven month departure where court considered the murder of defendant's father, severe physical abuse defendant suffered at the hands of mother and uncle, sexual abuse he suffered by grandfather, and having been shuffled between foster homes until adulthood).

Ms. Hernandez is before this Court at 28 years old, but the impact of her early life abuse was a major contributor to her substance use, which continued until recently. Most severely, Ms. Hernandez and two of her sisters experienced sexual abuse at the hands of a family member, and further experienced her own family members not believing her when she courageously reported what what happening. This series of events caused severe harm to Ms. Hernandez and fractured her family relationships. Unfortunately, physical abuse continued to be prevalent in Ms. Hernandez' life throughout early adulthood. As Ms. Hernandez navigated difficult challenges, including seeking a place to stay and a need to escape abusive relationships, she still frequently made responsible choices - showing glimpses of her true nature. Ms. Hernandez has almost no criminal history, and maintained employment as a

6

cashier and a caregiver through very difficult periods in her life. She will continue to benefit from mental health treatment to help her better understand herself, her worth, and to be a better parent for her children. No longer living on the streets, no longer experiencing active addiction or an abusive relationship, Ms. Hernandez is in a great place to focus on continued self-improvement and parenthood.

3. **Ms. Hernandez Has a Minimal Criminal History & Has Not Previously Served Time**

Although Ms. Hernandez does not have a perfect history, her lone prior conviction is a misdemeanor from when she was just 20 years old. She has no other arrests or other criminal conduct. For first-time offenders, long periods of incarceration can do more damage than good by isolating individuals from their communities and families. "When prison sentences are relatively short, offenders are more likely to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. Conversely, when prisoners serve longer sentences they are more likely to become institutionalized and lose pro-social contacts in the community, and become removed from legitimate opportunities, all of which promote recidivism." Valerie Wright, *Deterrence in Criminal Justice, The Sentencing Project*, at 7 (Nov. 2010).  Indeed, studies reveal that low-risk offenders who are sentenced to long periods of incarceration are more likely to reoffend. *Id. See also United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming downward variance, justified in part by court's finding that prison would mean more to this defendant than one who has been imprisoned before).

7

District Courts have varied downward in sentencing where a defendant has not previously served a significant custodial term.  See, e.g., *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006) (upholding a sixty-month downward variance in part because defendant had only been incarcerated for seven months prior to his crime, despite being in Criminal History Category IV); *United States v. Newhouse*, 919 F.Supp.2d. (N.D. Iowa 2013) (varying down from career offender range to a ninety-six month sentence where defendant's only two prior convictions resulted in probationary sentences).

The 24 days that Ms. Hernandez served in custody prior to her release to treatment were the only period of incarceration she has ever experienced. Her subsequent success and positive adjustment to supervision reflect the impact this period, and the threat of going back into custody have had. Ms. Hernandez has worked very hard to overcome a severe and prolonged methamphetamine addiction. She took on this monumental task and is working through other difficulties to be present for her newborn child, and has been working hard to gain custody of her older children, which is imminent. This is a critical time to her continued success. Continuing to build a family life that includes being present for her children serves as the greatest motivation for Ms. Hernandez to continue on her positive journey. Ms. Hernandez has demonstrated strong will power and determination over the past nine months, and it is clear how much being available to her children means to her. A separation from her children at this point would have a negative impact on Ms. Hernandez' rehabilitation. The continued threat of future incarceration should she fail to abide the conditions of community supervision will serve as a great deterrent against any future criminal activity or substance

8

use. For a person who has not previously served a significant period of time in custody, the threat of incarceration will better deter recidivism than actual incarceration would at this time.

### 4. **Age and Lack of Youthful Guidance**

Through the help of supportive service providers, Ms. Hernandez has matured a great deal. Still, at the time of her participation in the instant crimes, she was 25, and lacked the guidance that she so desperately needed in her teens and early twenties. Her recent rehabilitation demonstrates how well Ms. Hernandez can do with help and guidance. Had she had the support and maturity she does now several years earlier, she may have never found herself facing federal firearm charges.

A defendant's youth is a valid consideration in sentencing. *See Gall v. United States*, 552 U.S. 38, 58 (2007) ("Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five . . . While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant") (quoting sentencing court); *Roper v. Simmons*, 543 U.S. 551, 567 (2005) ("Today our society views juveniles, in the words Atkins used respecting the mentally retarded, as categorically less culpable than the average criminal . . . A lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions.").

9

U.S.S.G. § 5H1.12 and 5K2.0(d)(1) treat lack of guidance as a youth and circumstances indicating a disadvantaged upbringing as forbidden departure grounds. However, *Booker* and its progeny free District Courts to consider these factors as part of their analysis under § 3553(a).  *See*, *e,g,*, *United States v. Samuels*, 2009 WL 875320 (S.D.N.Y. Apr. 2, 2009) (imposing time served sentence rather than Guideline range of seventy to eighty-seven months where defendant "was raised under poor economic circumstances with an abusive father addicted to crack"); *United States v. Mapp*, 2007 WL 485513 (E.D. Mich. Feb. 9, 2007) (granting variance based on defendant's upbringing where he frequently witnessed domestic violence and substance abuse by his parents until his grandmother took custody of him at age five).

Ms. Hernandez's 2023 conduct falls at the outer edge of behavior influenced by characteristics of youth (impulsivity, impressionability), but still within an age where actions are influenced by these factors. Ms. Hernandez understands that her age will not mitigate any future mistakes. During Ms. Hernandez' pre-sentence interview, she revealed that she did not even know the kind of help that was available to her. Now that she does, she is fully accepting help in her continued progress and success. Not having had support and guidance in childhood, adolescence and young adulthood will have less impact on Ms. Hernandez as she continues to participate in treatment, understands her parental responsibility, and continues to rebuild relationships with family. The flip side of Ms. Hernandez' age and its impact on mistakes she made, is that her age also makes her better suited for rehabilitation; as she continues to get older and wiser, the factors in her poor decisions will erode further.

10

5. **Impact on Third Parties**

The Guidelines discourage departures on the basis of extraordinary family circumstances or the harsh effect of a defendant's incarceration on innocent family members. U.S.S.G. § 5H1.6. Nevertheless, sentencing courts have granted downward variances on this basis. *See United States v. Antonakoloulos*, 399 F.3d 68 (1st Cir. 2005) (on remand of bank fraud case, district court may consider defendant's role as caretaker for brain-damaged son even though alternative means of care existed); *United States v. Dominguez*, 296 F.3d 192 (3d Cir. 2002) (district court erred in concluding that it could not depart four levels in bank fraud case for defendant who resided with elderly parents, who were physically and financially dependent on her); *United States v. Lehmann*, 513 F.3d 805 (8th Cir. 2008) (sentence of probation affirmed where justified by the defendant's need to care for her nine year-old developmentally-disabled son).

Ms. Hernandez is the most important person in at least one young life, her infant son Amir. She is working hard to very soon regain custody of her other two sons, Marcelo, 5 and Abraham, 1. Marcelo has been diagnosed with Autism Spectrum Disorder and is non-verbal. Ms. Hernandez lost custody of her children in June of 2025, approximately three months before her instant arrest and the biggest catalyst for the turnaround she has made in her life. She understands how much her children need her, and that she is in the best position to avoid a separation from her children after so much hard work by strictly and faithfully abiding the conditions of supervision if given the chance to be on probation. Ms. Hernandez

11

vows to live a law-abiding and sober life for herself and her family, and to never put them or herself through the difficulties her mistakes in the past have.

### 6. The Offense Conduct Reflects Aberrant Behavior at this Stage of Defendant's Life

Although Ms. Hernandez has experienced drug addiction issues and some legal trouble in the past, she has also exhibited extended periods of sobriety and a strong devotion to being a good mother. She further has a solid employment history that demonstrates her willingness to work to support herself and her children. Her conduct in late 2023 was misguided, desperate, and not something that will ever be repeated.

Ms. Hernandez is hopeful that she has made enough positive changes to warrant an opportunity to continue to grow through probation. She has shown, through her conduct on pretrial release, that conditions of probation can help guide her through her continued journey of self-improvement, and she understands that the only way that she will be able to be there for her children is to continue a sober, law-abiding life. Not only has Ms. Hernandez made significant progress since her arrest, but there are aspects of her past which also show her law-abiding nature outside of the aberrant mistake that she made in 2023.

### 7. Consistency of Sentencing Among Defendants

As noted in the Report, Ms. Hernandez' case is related to case number 2:24-00169, a three-defendant case involving Juan Daniel Lugo Moya ("Mr. Lugo") (sentenced to 40 months on weapons trafficking charges), Lisa Diane Burke ("Ms. Burke") (sentenced to 36

12

months probation), and Noe Lugo-Moya (not yet sentenced as of this date). Sentencing courts may vary downward to avoid a sentencing disparity among co-defendants. *See, e.g., United States v. Reyes-Santiago*, 804 F.3d 453, 467-73 (1st Cir. 2015) (holding that district court's sentence was substantively unreasonable and an abuse of discretion because of its substantial and insufficiently explained disparity with co-defendants' sentences where district court refused to accept stipulated drug amount for defendant but had accepted plea stipulation for co-defendants who were equally culpable); *United States v. Martin*, 520 F.3d 87 (1st Cir 2008) (affirming where district court declined to apply career offender sentence for cocaine base distribution conspiracy and granted ninety-one-month downward departure based in part on need to avoid disparity relative to coconspirator's sentencing); *United States v. Simpson*, 209 F. App'x 279 (4th Cir. 2006) (affirming 29-month variance for extensive drug conspiracy, kidnaping, and aiding the brandishing of a firearm in light of sentences co-conspirators received); *United States v. Lazenby*, 439 F.3d 928, 934 (8th Cir. 2006) (finding sentences of two co-defendants substantively unreasonable where one was substantially higher than the other, creating an extreme disparity that could diminish respect for the law); *United States v. Tzoc-Sierra*, 387 F.3d 978 (9th Cir. 2004) (affirming district court's ten-month downward departure from Guideline range for drug offense where district court wanted to ensure sentence was equivalent to that of comparable co-defendants).

Though not exactly co-defendants, Mr. Lugo and Ms. Burke are involved in the same criminal scheme. Also young at the time of his crimes, and having overcome his own difficulties in life, Mr. Lugo had the prominent role in this crime, including arranging for the

13

purchase and sale by numerous straw-purchasers. Mr. Lugo recruited Ms. Burke and Ms. Hernandez, as well as his brother to purchase firearms on his behalf. Mr. Lugo's more direct involvement in the organization and sale of the firearms indicated not only a larger role, but also constituted a more serious offense, weapons trafficking. Without Mr. Lugo's supervision, Ms. Hernandez could not and would not have purchased firearms nor turned them over to their final users. Conversely, Mr. Lugo did have others who would make purchases on his behalf. Though Ms. Burke was only involved in the straw purchase of approximately ten firearms, her role and that of Ms. Hernandez are much more aligned. It was Ms. Hernandez' closer relationship to Mr. Lugo, rather than a greater role in the offenses, that explains the disparity in the number of purchases. Though both common sense and the Guidelines distinguish between Ms. Burke and Ms. Hernandez' crimes, the totality of all circumstances warrant similar sentences for Ms. Hernandez and Ms. Burke. Both made youthful mistakes and struggled with substance use and difficult upbringings, but Ms. Hernandez' circumstances and post-arrest rehabilitation warrants a grant of probation.

14

C. **Conclusion**

Wherefore, undersigned counsel respectfully requests that this court, considering Ms. Gibbs' past, present, and future, impose a sentence of probation, where she may continue to learn the tools to be successful and making better decisions.


RESPECTFULLY SUBMITTED:  May 14, 2026


_s/ Nicholas Loncar_____
Nicholas Milan Loncar, Esq.
Attorney for Defendant
Ana Bertha Hernandez

15

**PROOF OF SERVICE**

I am employed in the County of Pima, State of Arizona.  I am over the age of 18 and not a party to the within action; my business address is 2030 E Broadway Blvd, Ste 123, Tucson, Arizona 85719.

On May 14, 2026, I served the document described as:

**SENTENCING MEMORANDUM**

Through the Court's ECF Electronic filing and service system.

*/s/ Nicholas Loncar*

Nicholas Loncar

16